Opinion issued January 20, 2005











 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00582-CV




HOUSTON PROFESSIONAL FIRE FIGHTERS’ ASSOCIATION, LOCAL
341; STEVEN D. WILLIAMS, INDIVIDUALLY AND AS PRESIDENT OF
LOCAL 341, Appellants

V.

CITY OF HOUSTON; FIRE CHIEF CHRISTOPHER CONNEALY,
Appellees




On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2002-05788




O P I N I O N
          This is an appeal from a summary judgment rendered in favor of appellees,
former Fire Chief Christopher Connealy and the City of Houston (“the City”). 
Appellants, Houston Professional Fire Fighters Association et al. (“HPFFA”), filed
a suit challenging the City’s practice of assigning Houston Fire Department (“HFD”)
cadets to ambulance duty in contravention of the Texas Local Government Code,
Chapter 143 and the Code of Ordinances of the City of Houston, Section 4-9. On
appeal, the issue is whether fire department cadets, by being assigned to HFD
ambulances to perform emergency medical services, are performing functions
reserved for classified fire fighters, thereby displacing classified fire fighters in
contravention of Chapter 143 and Section 4-9. We affirm. 
BACKGROUND
          Starting in the early 1970s, classified fire fighters exclusively delivered
emergency medical services for HFD. Fire department cadets were not permitted to
deliver emergency medical services within the City of Houston. The cadets at issue
in this case are certified Emergency Medical Technicians (“EMT”), but are not yet
state-certified as firefighting personnel. On November 16, 2001, Fire Chief
Christopher Connealy distributed a memorandum describing a new HFD program
(“EMT program”) that became effective on November 17, 2001. The EMT program
permitted the assignment of fire department cadets to HFD ambulances. Pursuant to
the EMT program, cadets now perform emergency medical functions on HFD
ambulances. Cadets and classified fire fighters are currently performing the same
kind of work in terms of patient care while assigned to HFD ambulances. 
          HPFFA filed a suit for declaratory judgment contending that only classified fire
fighters may perform the functions and jobs regularly performed by classified fire
fighters. HPFFA also sought to permanently enjoin the City (1) from using non-classified employees, which includes cadets according to HPFFA, to do functions
regularly performed by classified fire fighters and (2) from denying HFD fire fighters
their back pay and benefits. HPFFA contends that the City was displacing classified
fire fighters in contravention of both Chapter 143 of the Texas Local Government
Code, commonly referred to as the Police Officers’ and Fire Fighters’ Civil Service
Act, (“Chapter 143”) and Section 4-9 of the Code of City Ordinances of the City of
Houston (“city ordinance”). HPFFA argues that the EMT program violates Chapter
143 because the statute requires positions within HFD to be filled by classified fire
fighters. HPFFA claims that cadets are not classified fire fighters because (1) cadets
have not been appointed in substantial compliance with the requirements of Chapter
143, (2) cadets are not included in the city’s classification ordinance,


 and (3) cadets
have not completed the fire training curriculum required by Chapter 419 of the Texas
Government Code.


 HPFFA argues that the EMT program violates Section 4-9 of the
Houston City Ordinance because the ordinance prohibits anyone except HFD’s
classified fire fighters from delivering medical services while driving HFD
ambulances in Houston.
          The City filed a motion for summary judgment attacking HPFFA’s arguments
regarding Chapter 143 and the city ordinance.


 HPFFA filed a response and a partial
motion for summary judgment. On March 19, 2003, the court granted the City’s
motion for summary judgment and denied HPFFA’s partial motion for summary
judgment. HPFFA filed a motion for new trial, but the trial court denied its motion
after a hearing.
          In its sole issue on appeal, HPFFA contends that the trial court erred by
denying its partial motion for summary judgment and granting the City’s motion for
summary judgment. HPFFA argues that cadets are not classified fire fighters and,
pursuant to the EMT program, cadets are displacing classified fire fighters in
violation of Chapter 143 and Section 4-9 of the Houston City Ordinance.
DISCUSSION
          In reviewing a summary judgment, an appellate court must consider whether
the successful movant at the trial level carried its burden of showing that there was
no genuine issue of material fact and that judgment should be rendered as a matter of
law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). We assume all of the non-movant’s
evidence is true and indulge every reasonable inference in favor of the non-movant. 
Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). If the movant can
show it is entitled to judgment as a matter of law, the burden shifts to the non-movant
to present evidence raising a fact issue to defeat the motion for summary judgment. 
Haight v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.]
1991, writ denied). When, as here, both sides move for summary judgment and the
trial court grants one motion and denies the other, the reviewing court should review
the summary judgment evidence presented by both sides and determine all questions
presented. See Comm’rs Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex.
1997). The reviewing court should render such judgment as the trial court should
have rendered. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). When the trial
court’s order does not specify the grounds on which a motion for summary judgment
was granted, we will affirm the summary judgment if any of the theories advanced in
the motion is meritorious. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625
(Tex. 1996). 
          Because this appeal requires us to interpret sections of the Local Government
Code, we restate the basic principles of statutory construction. Interpreting statutes
is a legal matter, subject to de novo review. Bragg v. Edwards Aquifer Auth., 71
S.W.3d 729, 734 (Tex. 2002). The overriding goal of statutory interpretation is to
determine the legislature’s intent. Cont’l Cas. Co. v. Downs, 81 S.W.3d 803, 805
(Tex. 2002). In order to ascertain legislative intent, we first look to the plain and
common meaning of the words used by the Legislature. Tex. Gov’t Code Ann. §
311.011 (Vernon 1998 & Supp. 2004); Argonaut Ins. Co. v. Baker, 87 S.W.3d 526,
529 (Tex. 2002).
What is a HFD Cadet?
          The threshold issue is whether, by assigning cadets to HFD ambulances to
perform emergency medical services, non-classified HFD employees are performing
the functions reserved for classified fire fighters, in contravention of Chapter 143.
          Section 143.003 of Chapter 143 provides: “Fire fighter” means a member of a fire department who
was appointed in substantial compliance with this chapter 
or who is entitled to civil service status under Section 
143.005 or 143.084. The term includes employees who 
perform: 
          (A) fire suppression;
          (B) fire prevention;
          (C) fire training;
          (D) fire safety education;
          (E) fire maintenance;
          (F) fire communications;
          (G) fire medical emergency technology;
          (H) fire photography; 
          (I) fire administration; or
          (J) fire arson investigation.
 
Tex. Loc. Gov’t Code Ann. § 143.003(4) (Vernon Supp. 2004-2005). Section 143.021
provides, “The commission shall provide for the classification of all fire fighters and
police officers. The municipality’s governing body shall establish the classifications
by ordinance. The governing body by ordinance shall prescribe the number of
positions in each classification.” Tex. Loc. Gov’t Code Ann. § 143.021(a) (Vernon
Supp. 1999). 
          The outcome of this case is determined by whether a cadet is a classified
position within the HFD. HPFFA argues that cadets are not classified fire fighters. 
In support of its motion, the City argues that a cadet is a classified position and that
there is no genuine issue of material fact.
           According to Fire Chief Connealy, a cadet is “an individual that’s hired by the
City to be trained as a firefighter.” Under the EMT program, cadets are first trained
at the fire academy for approximately five weeks solely for emergency medical care
at the level of an emergency medical technician. Once a cadet has been certified by
the State as an EMT, the cadet is assigned to an HFD ambulance where he works with
an engineer operator EMT or a state-certified fire fighter EMT. On these ambulances,
cadets are “doing the same job in the capacity of patient care” as classified fire
fighters. It is only after the cadets have worked on HFD ambulances for
approximately 20 weeks in compliance with the EMT program that they return to the
academy to complete training in fire fighting techniques


 in order to gain their state-certification as fire fighting personnel.



          Historically, cadets or trainees


 were treated as non-classified employees. 
Before January 1, 2002, HFD cadets or academy trainees were not administered the
civil service entrance examination until after they had completed their training at the
fire academy. However, as a result of a Consent Decree and the settlement of
litigation in Nugent v. City of Houston, challenging the timing of HFD’s
administration of its civil service examination, the City, since 2002, has administered
the entrance examination prior to the cadet’s entry into the academy as part of the
initial hiring process under Chapter 143. See Nugent v. City of Houston, 159 F. Supp.
2d 529, 534 (S.D. Tex. 2001) (finding that City of Houston’s administration of
entrance examination after fire department cadets have received six months of
academy training violated Chapter 143 of Texas Local Government Code). 
Classification Analysis
          A. Definition of Fire Fighter
          To determine whether a cadet is a classified position, we must determine
whether cadets are “fire fighters” within the protection of Chapter 143. Chapter 143’s
statutory definition of a “fire fighter” includes “a member of a fire department who
was appointed in substantial compliance with this chapter” and includes, but is not
limited to, those employees who perform “fire medical emergency technology.”


 
Tex. Loc. Gov’t Code Ann. § 143.003(4) (Vernon Supp. 2004-2005). Chapter 143
does not provide a definition for “fire medical emergency technology.”



          Our primary goal in interpreting a statute is to ascertain and to effectuate the
Legislature’s intent. Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d
482, 484 (Tex. 1998). In doing so, we begin with the statute’s plain language before
resorting to rules of construction. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001); Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865-66 (Tex. 1999). We begin with the plain language because we assume that the
Legislature attempted to say what it meant; therefore, the statute’s words should be
the surest guide to the Legislature’s intent. Fitzgerald, 996 S.W.2d at 866. In
ascertaining legislative intent, we do not confine our review to isolated statutory
words, phrases, or clauses, but we instead examine the entire act. Meritor Auto., Inc.
v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001); see Tex. Gov’t Code Ann.
311.011 (Vernon 1998) (instructing courts to construe words and phrases in context). 
          In interpreting section 143.003(4), we start with its plain language. See
Wilkins, 47 S.W.3d at 493. Only if we find that section 143.003(4)’s plain language
is susceptible of two or more reasonable interpretations will we hold that the statute
is ambiguous. See In re Missouri Pac. R.R. Co., 998 S.W.2d 212, 217 (Tex. 1999). 
We construe section 143.003(4) to include cadets as members who perform “fire
medical emergency technology” and, thus, within the statutory definition of a fire
fighter. Tex. Loc. Gov’t Code Ann. § 143.003(4) (Vernon Supp. 2004-2005).
          B. The City’s Classification Ordinance
          In addition to the requirement that a member of the fire department must be a
“fire fighter” under Section 143.003, Section 143.021 provides the second
requirement for a position within the fire department to become a classified position. 
It states that the Fire Fighters’ and Police Officers’ Civil Service Commission “shall
provide for the classification of all fire fighters” and that the “municipality’s
governing body shall establish the classifications by ordinance.” Tex. Loc. Gov’t
Code Ann. § 143.021(a) (Vernon 1999). 
          Houston’s classification ordinance does not expressly mention “cadets” as a
classified position. Therefore, HPFFA argues that the cadet positions must be
civilian, i.e., non-classified.


 However, HPFFA’s argument does not comport with
the language of Chapter 143. Chapter 143 clarifies that the failure of the
municipality’s governing body to establish a position as classified “does not result in
the loss of civil service benefits by a person entitled to civil service protection or
appointed to the position in substantial compliance with this chapter.” Tex. Loc.
Gov’t Code Ann. § 143.021(b) (Vernon 1999). Section 143.031(b) clarifies that the
Houston classification ordinance’s exclusion of cadets as an enumerated classified
position does not necessarily indicate the cadets’ status as civilians. Although it is
unclear from the language of the statute whether a position excluded from a city’s
classification ordinance can still be classified, Texas courts have found that they can
be. See Lee v. City of Houston, 807 S.W.2d 290, 295 (Tex. 1991).
          C. Alternative to the Classification Ordinance
          When a municipality creates an unclassified position, i.e. a position that should
be classified under Chapter 143, Texas courts will deem it to have been properly
created and treat the position as classified. See Lee v. City of Houston, 807 S.W.2d
290, 295 (Tex. 1991) (holding that placing unclassified employees in certain positions
that must be classified contravened Chapter 143) (“Lee I”); see also Lee v. Downey,
842 S.W.2d 646, 649 (Tex. 1992) (subsequent mandamus action where court ordered
that plaintiffs, who were at the top of the eligibility list when unclassified civilian
employees took jobs, receive those positions even though city council did not
specifically create positions as classified positions) (“Lee II”). In Lee I, the supreme
court established a test to determine whether a position must be classified under
Chapter 143. The Lee I test, as applied to police department employees, states: 
If a particular position requires substantial knowledge of
“police work and work in the police department,” then it
must be classified. Conversely, if a position requires no
knowledge of such work, then the position need not be
classified. Where the duties and functions entailed by a
particular job are undisputed, the determination of whether
that job requires knowledge of police work and work in the
police department is a question of law for the court.
 
Lee v. City of Houston, 807 S.W.2d at 294 (citing to Tex. Loc. Gov’t Code Ann. §
143.025(b)). In Lee II, the Texas Supreme Court granted mandamus requiring the
trial court to reverse its failure to apply the test it set out in Lee I to determine whether
the positions at issue must be classified. 842 S.W.2d at 648. Although the positions
at issue in Lee I and Lee II were within the police department, Chapter 143 applies
to both fire and police departments, and thus, these cases provide analogous rules for
applying Chapter 143 to positions in the fire department. See Tex. Loc. Gov’t Code
Ann. §§ 143.001-.003 (Vernon Supp. 2004-2005). The court also added that where
the duties and functions entailed by a particular position are undisputed, the
determination of whether that position requires knowledge of police (or fire) work
and work in the police (or fire department) is a question of law for the court. Id. 
Applying the test set out by the Texas Supreme Court to our facts, we hold that cadets
should be deemed “classified” if the record reveals that the position of cadet requires
a person’s knowledge of fire fighting and work in the fire department. See Tex. Loc.
Gov’t Code Ann. § 143.025(b) (Vernon 1999). We, therefore, turn to whether the
position requires such knowledge.
          According to Chapter 143, before a cadet can attend the fire academy, every
cadet must have taken and passed a civil service entrance examination that, by statute,
must be based on “the person’s knowledge of and qualifications for fire fighting and
work in the fire department.” Tex. Loc. Gov’t Code Ann. § 143.025(b) (Vernon
1999). This prerequisite for becoming a cadet suggests that every cadet is required
to know about fire fighting and working the fire department. Once the cadet has
passed the examination, the cadet attends emergency medical technician training in
order to provide emergency medical services on a HFD ambulance. After obtaining
state-certification as an EMT, each cadet assigned to a HFD ambulance takes the
place previously filled by a state-certified, classified fire fighter EMT, who is instead
assigned to a fire truck to fight fires. 
          According to Fire Chief Connealy, under the EMT program, while riding on
HFD ambulances, HFD cadets have been performing the same job and functions as
state-certified, classified fire fighter EMTs. In his deposition testimony, Fire Chief
Connealy testified that although cadets do not “do any firefighting at all,” they do
respond to fires in order to “to provide EMS services to any firefighters or civilians
that may get injured at the fire.” To perform their in-the-field work on HFD
ambulances, cadets, even though they are not state-certified firefighters and do not
fight fires while in the back of an ambulance, must know about fire fighting in order
to render the emergency services necessary to save those affected by the fires. 
Furthermore, cadets must know about the role of the ambulance on which they serve
within the overall workings of the fire department.


 Referring to the role of the EMS
ambulances in the fire department, Fire Chief Connealy stated that “80% of our
business is EMS.” Therefore, we find that the cadet position requires “knowledge of
fire fighting and work in the fire department.” Thus, although the city classification
ordinance fails to expressly include the cadet position as a classified position and
because cadets are fire fighters within the civil service hierarchy of Chapter 143,
cadets must be deemed classified by this Court. See Lee v. City of Houston, 807
S.W.2d at 295 (“All positions in the civil service hierarchy—that is, all classified
positions, and all positions entailing the supervision of classified employees—must
be classified, and all appointments to those positions must be made in accordance
with the Act.”) (citation omitted); Tex. Loc. Gov’t Code Ann. § 143.021 (Vernon
1999).



          Because the EMT program merely assigns cadets, who are properly
characterized as “classified fire fighters,” to perform functions alongside other
classified fire fighters, and we find that cadets are not civilians, we cannot say that
civilians are displacing classified fire fighters. Therefore, the EMT program does not
contravene Chapter 143.
City of Houston Code of Ordinances § 4-9
          HPFFA also claims that the trial court erred in granting summary judgment for
the City because it properly pleaded and offered evidence to show the existence of a
material fact in that Section 4-9 of the Houston city ordinance is violated by the EMT
program. This contention is without merit. Section 4-9(a) states as follows:
It shall be unlawful for any person or persons other than
members of such fire department in its classified civil
service, while driving emergency ambulances operated by
the fire department, to furnish or attempt to furnish
ambulance service or to operate or drive or cause to be
operated or drive any ambulance on the streets of the city
for the purpose of furnishing emergency ambulance
service.
 
Houston, Tex., Ordinances § 4-9(a) (1968) (emphasis added). By its express
terms, the ordinance does not apply to any HFD fire fighters in a classified position. 
Because the City presented evidence that demonstrates that cadets must be deemed
classified fire fighters of the fire department, Section 4-9 does not apply to cadets. 
Therefore, the EMT program does not violate the city ordinance.
                              Indulging every reasonable inference in HPFFA’s favor, the evidence
demonstrates no genuine issue as to the fact that fire department cadets are classified
fire fighters and thereby, not violating Chapter 143 or Section 9 of the city ordinance.
CONCLUSION
                              Because the trial court did not err in granting summary judgment, we affirm the
trial court’s judgment.
 
 
 
                                                                                  Sherry Radack
                                                                                  Chief Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Justice Keyes, concurring.